**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF WEST VIRGINIA**
**CHARLESTON**

CLEVE DAUGHTERY, JR.,[1]

      Movant,

v.                                    Case No. 2:05-cr-00213
                                      Case No. 2:08-cv-00295

UNITED STATES OF AMERICA,

      Respondent.


**PROPOSED FINDINGS AND RECOMMENDATION**

On May 7, 2008, Cleve Daughtery, Jr. (hereinafter "Defendant") filed a motion to vacate, set aside, or correct sentence pursuant to 28 U.S.C. § 2255 (docket # 94). Defendant is serving a sentence of sixty months, to be followed by a three year term of supervised release, after his conviction by a jury of cultivating marijuana. (Judgment entered May 23, 2006, # 62.) His appeal was unsuccessful. United States v. Daughtery, No. 06-4586 (4th Cir., Feb. 1, 2007)(unpublished) [## 83, 84]. Defendant's judgment became final on May 29, 2007, when the Supreme Court denied his petition for a writ of certiorari.

Pending before the court are Defendant's § 2255 motion, a document entitled "Re: Firearm Enhancement Pursuant to Watson v. U.S. (# 86), his "motion to dismiss indictment, vacate judgment and

---

[1] There is a pending motion (docket # 80), filed after judgment was entered but before the appeal was decided, to correct the spelling of Defendant's last name from "Daughtery" to "Daugherty." Because there is no ruling on that motion, the undersigned will refer to Defendant by "Daughtery."

sentence, order to compel immediate release of person misidentified
(# 108), and his motion to expedite ruling (# 109).

### Facts of the Case

According to the presentence investigation report ("PSR")
prepared by the Probation Department, the offense conduct was as
follows:

5.   The government's prosecution of Cleve Daughtery is
the result of an anonymous tip that led to his arrest on
June 25, 2003, by Officers with the West Virginia State
Police (WVSP), in Boone County, West Virginia.  The WVSP
received an anonymous call advising that the defendant
was growing marijuana in plain view on his property.
State troopers drove by the defendant's residence and
observed several marijuana plants growing in plain sight
in his yard near his mobile home.

6.   A search warrant was obtained for Mr. Daughtery's
property and residence, which located the following: 38
marijuana plants, growing in pots; 3 plastic baggies
containing quantities of marijuana; a large quantity of
cash; scales, and other paraphernalia related to the use
and distribution of drugs.   In addition to the
aforementioned items, officers seized the following
firearms:
       R.P.M. semi-automatic 7.62 x 39 cal. rifle
       Winchester .22 caliber semi-automatic rifle
       S.S. Kresge Co. 16 gauge shotgun
       Remington Game Master 30-06 spring rifle
       Browning Arms Co., model 30, 12-gauge shotgun
       Winchester .22 caliber semi-automatic rifle
       Browning Arms Co., model 30, 12-gauge shotgun
       Marlin model 25 MN, .22 bolt-action rifle
       Remington Wood Master, model 740, 30-06 spring rifle
       Smith and Wesson, model 29-3, 44-magnum revolver
          with a 2x Burris scope
       Harrington & Richardson, auto ejecting, .38 S & W,
          CTGE, five shot revolver
       Intratec 9mm luger, model AB-10 semi-automatic pistol.
The marijuana seized in the search of the defendant's
residence was analyzed and weighed 52.4 grams.

7.   After being advised of his rights, Mr. Daughtery

2

gave a voluntary written statement to the WVSP.  He indicated the marijuana plants found growing on his property belonged to him, and the marijuana found in his house was purchased from a Mexican national, identified as "Caesar," who had been staying with him for the last two months.  Caesar was present during the search, and according to the defendant, Caesar had been transporting marijuana and cocaine from Texas to West Virginia for the last two months.

8.  In his statement to police, Mr. Daughtery said he had purchased approximately five pounds of marijuana from Caesar a week prior to the search, and the large quantity of money found in the search was for the defendant to pay Caesar for the marijuana fronted to him.  He estimated having received a total of between 46 and 50 pounds of marijuana from Caesar in the following quantities: 8 pounds; 20 pounds; 13 pounds and 5 pounds.

9.  Mr. Daughtery reported that during the two months prior to the search, he had received a total of two ounces of cocaine from Caesar.  The cocaine had been mailed by Federal Express in two packages that contained one ounce of cocaine, each.  The defendant related he typically paid Caesar by Western Union transfers.

10.  The defendant named Carlos and David Bradshaw as his other suppliers of marijuana.  According to Mr. Daughtery, the Bradshaws' source for marijuana was also Caesar.  Over the past 10 years (1993-2003), the defendant said he purchased 10-15 pounds of marijuana per month (120 months x 10 lbs. = 1,200 pounds) from the Bradshaw brothers.  He claimed ownership of all the firearms located in his residence and advised that he had traded 1/4 pound of marijuana for the R.P.M. semi-automatic 7.62 x 39 caliber rifle.

(PSR, ¶¶ 5-10, at 3-4.)  The probation officer converted all the controlled substances to marijuana equivalents and determined that Defendant's relevant conduct amounted to 580.378 kilograms.  Id., ¶ 11, at 4-5.

## § 2255 Motion

Defendant raises three grounds for relief in his motion:

3

> Ground one: Two level reduction for perjury which the petitioner did not purge [sic; perjure] himself nor was he found guilty of that offense by his peers.  Never was charged with perjury nor obstruction of justice.
>
> Ground two: A person who accepts a firearm as payment for drugs does not "use" a firearm "during and in relation to . . . [a] drug trafficking crime" for purposes of the mandatory minimum sentencing provisions set forth (receiving a firearm in exchange for drugs cannot be deemed "use").
>
> Ground three: Ineffective assistance of counsel.  Trial lawyer is not to stay on as counsel upon a defendant's trial and being found guilty and allowed to file an appeal.  (Public Defender)

(# 94, at 4, 7.)

The United States responded to Defendant's first argument by asserting that Defendant raised this issue on appeal (# 97, at 5).  This is not accurate.  The Fourth Circuit characterized Defendant's first appellate argument as follows: "Daughtery first contends that the district court abused its discretion in allowing the government to impeach him with prior statements that contradicted his testimony on direct examination." United States v. Daughtery, slip op. at 2.  The undersigned reads Defendant's claim in his § 2255 motion as being that he should not have received a two-level enhancement for obstruction of justice.

The PSR recites that Defendant's Base Offense Level was 28, based on 580.378 kilograms of marijuana (at least 400 kilos but less than 700 kilos).  Defendant's criminal history category was I.  (PSR, ¶ 26, at 6.)  Thus Defendant's guideline range, without consideration of any enhancements, was 78-97 months, although the

maximum statutory penalty was only 60 months.  The PSR did assign an additional two levels, pursuant to USSG §3C1.1, noting that Defendant testified before the jury, he denied any knowledge of drug trafficking, and the jury convicted him.  Id., ¶ 21, at 6. The two-level enhancement for obstruction of justice had no effect on Defendant's sentencing guideline range due to the maximum statutory penalty.

Defendant's second argument also appears to arise out of the PSR.  Although the report stated that Defendant "traded 1/4 pound of marijuana for the R.P.M. semi-automatic 7.62 x 39 caliber rifle," (PSR, ¶ 10, at 4), the PSR applied a Specific Offense Characteristic for possession of dangerous weapons, id., ¶ 17, at 5.  The latter Specific Offense Characteristic is authorized by USSG §2D1.1(b)(1), and was adopted by Chief Judge Goodwin.  Again, the enhancement had no effect on Defendant's sentence, because the drug quantity triggered a guideline range which exceeded the statutory maximum.

Defendant's third claim appears to assert that he was entitled to a new lawyer on appeal.  There is no basis for such an assertion, and Defendant has not given any indication that he was dissatisfied with the performance of his attorney.

The undersigned proposes that the presiding District Judge **FIND** that the grounds for relief in Defendant's § 2255 motion are without merit.  It is respectfully **RECOMMENDED** that the § 2255

motion be denied.

### Re: Firearm Enhancement

Defendant moves "the court to dismiss the firearm enhancement (2 points) and award a sentence reduction." (# 86, at 1.) He argues that he did not "use" a firearm in relation to his drug offense. Id.

As noted above, the two-level enhancement for possession of dangerous weapons in connection with a drug offense, imposed pursuant to USSG §2D1.1(b)(1), had no effect on Defendant's sentence. Defendant was not accused of "using" a firearm during and in relation to a drug trafficking crime, which is prosecuted under 18 U.S.C. § 924(c).

The undersigned proposes that the presiding District Judge **FIND** that Defendant's request for a sentence reduction is without merit. It is respectfully **RECOMMENDED** that his motion at # 86 be denied.

### Motion to Dismiss Indictment, etc.

Defendant's motion concerns the spelling of his last name (# 108). During his prosecution and direct appeal, Defendant was identified as Cleve Daugh<u>tery</u>, Jr. He contends that the proper spelling of his name is "Daugh<u>erty</u>," and that he should be released immediately. Id., at 2. Defendant points out that his attorney filed a "Motion for Correction in Defendant's Last Name," on August 18, 2006, but a ruling was never made.

6

From the return of the indictment on October 18, 2005, until the present (as demonstrated on the Bureau of Prisons' website), Defendant has been known as "Cleve Daugh<u>tery</u>, Jr." It is true that approximately one year after indictment (after Defendant was convicted and sentenced), his attorney filed the motion to correct the record.

Assuming that Defendant is correct and that his last name is correctly spelled "Daugh<u>erty</u>," the court notes that Defendant has failed to show that he was prejudiced by the misspelling by which he is now known. The two words sound similar; Defendant was convicted on evidence that was seized from his own residence; he was the only defendant on trial. Thus Defendant has no credible argument that he was the victim of mistaken identity. *See United States v. Denny*, 165 F.2d 668 (7th Cir. 1948).

The undersigned proposes that the presiding District Judge **FIND** that the misspelling of Defendant's name did not prejudice Defendant in any way, and that Defendant is the "Cleve Daughtery, Jr." who engaged in extensive marijuana cultivation and trafficking as charged in the indictment. It is respectfully **RECOMMENDED** that Defendant's motion to dismiss indictment, etc. (# 108) be denied.

### Motion to Expedite Ruling

It is respectfully **RECOMMENDED** that this motion (# 109) be denied as moot.

7

**Notice Regarding Objections**

The parties are notified that this Proposed Findings and Recommendation is hereby **FILED**, and a copy will be submitted to the Honorable Joseph R. Goodwin, Chief United States District Judge. Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), Rule 8(b) of the Rules Governing Proceedings in the United States District Courts Under Section 2255 of Title 28, United States Code, and Rule 45(c) of the Federal Rules of Criminal Procedure, the parties shall have ten days (filing of objections) and then three days (service/mailing) from the date of filing this Proposed Findings and Recommendation within which to file with the Clerk of this Court, specific written objections, identifying the portions of the Proposed Findings and Recommendation to which objection is made, and the basis of such objection.  Extension of this time period may be granted for good cause shown.

Failure to file written objections as set forth above shall constitute a waiver of de novo review by the District Court and a waiver of appellate review by the Circuit Court of Appeals.  Snyder v. Ridenour, 889 F.2d 1363 (4th Cir. 1989); Thomas v. Arn, 474 U.S. 140 (1985); Wright v. Collins, 766 F.2d 841 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91 (4th Cir. 1984).  Copies of such objections shall be served on the United States Attorney, Chief Judge Goodwin, and this Magistrate Judge.

The Clerk is directed to file this Proposed Findings and Recommendation and to mail a copy of the same to Defendant and to counsel of record.


May 27, 2009                                    *Mary E. Stanley*
     Date                              Mary E. Stanley
                                       United States Magistrate Judge